**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 06-CR-1028-LRR |
| vs. | **SENTENCING MEMORANDUM** |
| DENNIS MORRIS BROWN, | |
| Defendant. | |

_____

## *I. INTRODUCTION*

In this sentencing, the court decided whether Defendant Dennis Morris Brown was subject to a mandatory minimum sentence of life imprisonment, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), 851 and 860. The court also decided whether Defendant was a "career offender" for purposes of USSG §4B1.1.

## *II. PROCEDURAL BACKGROUND*

On June 21, 2006, the grand jury returned a two-count Indictment against Defendant. Count 1 charged that, on or about April 11, 2005, Defendant knowingly and intentionally distributed approximately 2.36 grams of a mixture or substance containing a detectable amount of cocaine base, commonly known as "crack cocaine," within 1,000 feet of the real property comprising a playground and a private elementary school, namely, Jackson Park and St. Mary/St. Patrick School in Dubuque, Iowa, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 860. Count 2 charged that, on or about May 18, 2005, Defendant knowingly and intentionally distributed approximately 2.57 grams of the same substance at the same location, in violation of the same statutes.

In August of 2006, the government formally notified Defendant that it intended to pursue enhancements to his mandatory minimum sentence and fine, pursuant to 21 U.S.C. § 851. The government alleged that Defendant had three prior felony drug convictions in

state court and, therefore, was subject to a mandatory minimum sentence of life imprisonment and up to an $8,000,000 fine.

On September 1, 2006, Defendant appeared before a United States magistrate judge and pled guilty to Count 2 of the Indictment. On September 9, 2006, the court accepted Defendant's guilty plea. Defendant pled guilty pursuant to a plea agreement ("Plea Agreement"). The Plea Agreement stated that "Defendant understands that, based upon at least two prior felony drug convictions, [a conviction on Count 2] is punishable by the following penalties: (1) a mandatory minimum term of life years [sic] imprisonment without the possibility of parole; (2) a fine of up to $8,000,000; and (3) a mandatory special assessment of $100." Plea Agreement (docket no. 39-2), at ¶ 1. Defendant specifically reserved the right to "challeng[e] the application of a mandatory minimum sentence of life imprisonment, including a challenge as to whether [D]efendant's prior convictions include 'two or more prior convictions for a felony drug offense' for the purposes of 21 U.S.C. § 841(b)(1)(A)." *Id.* at ¶ 20.

On January 31, 2007, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSIR"). On February 27, 2007, the USPO revised the PSIR. On March 28, 2007, the USPO revised the PSIR again.

On April 4 and May 4, 2007, the government and Defendant filed their respective sentencing memoranda. On May 7 and 11, 2007, Defendant filed supplements to his sentencing memorandum.

On May 18, 2007, sentencing proceedings were held at a hearing ("Hearing") before the undersigned. Assistant United States Attorney Peter E. Deegan represented the government. Attorney Michael M. Lindeman represented Defendant, who was personally present. At the Hearing, the court sentenced Defendant in a manner consistent with the instant Sentencing Memorandum.

### III. MANDATORY MINIMUM SENTENCE OF LIFE IMPRISONMENT

The parties agree that Defendant committed a violation of 21 U.S.C. § 860, because he pled guilty to Count 2. Section 860 provides for an enhanced sentence for "distributing . . . a controlled substance . . . within one thousand feet of . . . the real property comprising a . . . private elementary . . . school . . . or a playground . . . ." 21 U.S.C. § 860(a). The statute generally doubles the maximum sentence and fine for the underlying controlled substance offense. *See id.* However, § 860(b) provides that "[p]enalties for third and subsequent convictions shall be governed by [§] 841(b)(1)(A) of this title."[1] In pertinent part, 21 U.S.C. § 841(b)(1)(A) provides:

> If any person commits a violation of . . . section 860 . . . of this title after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release and fined [up to $8,000,000].

21 U.S.C. § 841(b)(1)(A). The parties dispute whether Defendant has "two or more prior convictions for a felony drug offense."

It is undisputed that Defendant has the following three convictions from the Iowa District Court in and for Dubuque County: (1) Case Number FECR16902, a 1992 conviction for Delivery of a Counterfeit Controlled Substance, in violation of Iowa Code § 204.401(1)(c)(6) (1989) ("1992 Counterfeit Substance Conviction"); (2) Case Number FECR17384, a 1993 conviction for Delivery of a Controlled Substance Within 1000 Feet of an Elementary School, in violation of Iowa Code §§ 204.401(1)(c) and 204.401A (1991) ("1993 Controlled Substance Conviction"); and (3) Case Number FECR17385, a 1993 conviction for Delivery of a Simulated or Counterfeit Controlled Substance Within 1000

---

[1] Notwithstanding the fact that this language is found in § 860, "[n]othing . . . requires that the predicate offenses . . . be offenses under § 860(a)." *United States v. Jenkins*, 4 F.3d 1338, 1342 (6th Cir. 1993) (citing *United States v. Blackwood*, 913 F.2d 139, 147 (4th Cir. 1990)). Defendant does not argue to the contrary.

3

Feet of an Elementary School, in violation of Iowa Code §§ 204.401(1)(c) and 204.401A ("1993 Counterfeit Substance Conviction"). It is also undisputed that Defendant's 1993 Controlled Substance Conviction qualifies as a "prior conviction[] for a felony drug offense." The fighting issue is whether Defendant's 1992 Counterfeit Substance Conviction and his 1993 Counterfeit Substance Conviction are "prior convictions for a felony drug offense."[2]

Elsewhere in the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, Congress specifically defined "felony drug offense" for purposes of 21 U.S.C. § 841(b)(1)(A) as follows:

> an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances.

21 U.S.C. § 802(44); *see id.* § 802 (stating that definition applies to entire subchapter); *see, e.g., United States v. Maynie*, 257 F.3d 908, 919 n.5 (8th Cir. 2003) (applying definition of "felony drug offense" in 21 U.S.C. § 802(44) to 21 U.S.C. § 841(b)(1)(A)). It is not disputed that Defendant's two prior convictions for delivery of counterfeit or simulated controlled substances are punishable by imprisonment for more than one year.[3] The question is whether convictions for delivery of counterfeit or simulated controlled substances are convictions for offenses that "prohibit[] or restrict[] conduct *relating to*

---

[2] This court recently held that a defendant's conviction under a very similar Illinois statute, which prohibited the delivery of "look-alike" controlled substances, qualified as a "felony drug offense" for purposes of 21 U.S.C. § 841(b)(1)(A). *See United States v. Robertson*, No. 05-CV-3005-LRR (N.D. Iowa Apr. 21, 2006) (unreported decision), *aff'd on other grounds*, 474 F.3d 538, 543 (8th Cir. 2007).

[3] In fact, Defendant was sentenced to ten years of imprisonment on his 1992 Counterfeit Substance Conviction and fifteen years of imprisonment on his 1993 Counterfeit Substance Conviction. PSIR ¶¶ 51, 55.

4

narcotic drugs . . . ." 21 U.S.C. § 802(44) (emphasis added).

The government contends "relating to" is a broad phrase, and thus convictions for delivery of counterfeit or simulated controlled substances clearly qualify. Defendant argues that such convictions necessarily do not relate to narcotic drugs, because, by definition, proof of possession of real narcotic drugs is not an element of the statutes of conviction. Defendant opines that, had Congress wished to include counterfeit drugs in the definition of a "felony drug offense," it would have expressly done so. Defendant points out that the Sentencing Commission expressly defined "controlled substance offense" as including the distribution of a "counterfeit substance." USSG §4B1.2(b) (defining "controlled substance offense" as including the distribution of a "counterfeit substance"). Neither party cites any cases on point.

The relevant portion of the Iowa statutes of the prior convictions states:

> [I]t is unlawful for any person to . . . deliver . . . a controlled substance, counterfeit substance,[4] or a simulated controlled substance[5] . . . .

---

[4] A "counterfeit substance" is:

> a controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance.

Iowa Code § 204.101(6) (1989).

[5] A "simulated controlled substance" is:

> a substance which is not a controlled substance but which is expressly represented to be a controlled substance, or a substance which is not a controlled substance but which is

(continued…)

5

Iowa Code § 204.401 (1989). The statute, which the Iowa Code Editor later renumbered to § 124.401, is derived from § 401 of the Uniform Controlled Substances Act. Iowa Code Ann. § 124.401 (2007). As recognized by the Iowa Supreme Court, the statute "prohibits delivery of controlled substances . . . [and] delivery of counterfeit substances, in language nearly identical to that prohibiting delivery of simulated controlled substances." *State v. Freeman*, 450 N.W.2d 826, 827 (Iowa 1990). "[T]he gist of [such an] offense is knowing representation of a substance to be a controlled substance and delivery of a noncontrolled substance . . . ." *Id.* (emphasis omitted). It is "designed 'to discourage anyone from engaging or appearing to engage in the narcotics traffic . . . .'" *Id.* (quoting *People v. Ernst*, 121 Cal. Rptr. 857, 861 (Cal. Ct. App. 1975)). As such, the statute, as far as the Controlled Substances Act is concerned, clearly "relat[es] to narcotic drugs" for purposes of the Controlled Substances Act. 21 U.S.C. § 802(44). It is an "offense involving controlled substances," and it "prohibits or restricts drug conduct." *Cf. United States v. Pazzanese*, 982 F.2d 251, 254 (8th Cir. 1992) (reversing § 841(b)(1)(A) enhancement, because conviction for criminal facilitation under New York law was not an "offense involving controlled substances" or "prohibit[ing] or restrict[ing] drug conduct," but rather it was "more of a general 'catch all' criminal statute").

To hold that a statute prohibiting the delivery of a counterfeit or simulated controlled substance did not "relat[e] to narcotic drugs" would ignore the fact that the Controlled Substances Act itself similarly penalizes the distribution of controlled substances and counterfeit substances. *Compare* 21 U.S.C. § 841(a)(1) (controlled

---

5(…continued)
> impliedly represented to be a controlled substance and which because of its nature, packaging, or appearance would lead a reasonable person to believe it to be a controlled substance.

Iowa Code § 204.101(27) (1989).

6

Case 2:06-cr-01028-LRR   Document 59   Filed 05/21/07   Page 6 of 9

substances), *with id.* § 841(a)(2) (counterfeit substances). Congress considers offenses involving controlled substances or counterfeit substances to be drug offenses. Obviously, when a defendant delivers a counterfeit controlled substance, many of the dangers and harms to society that are present when "the real deal" is delivered are also present. There is no indication that Congress intended to give a sentencing break to those who distribute counterfeit substances. *See, e.g.*, USSG §4B1.2(b) (defining "controlled substance offense" as including the distribution of a "counterfeit substance"). Rather, the phrase "relating to" is very broad and encompasses a wide range of potential conduct. *See United States v. Spikes*, 158 F.3d 913, 932 (6th Cir. 1998) (characterizing the phrase "relating to" in 21 U.S.C. § 802(44) as "expansive"). Section 802(44) clearly encompasses the knowing representation of a substance to be a controlled substance and delivery of a noncontrolled substance. *Cf. United States v. Millard*, 139 F.3d 1200, 1209 (8th Cir. 1998) (affirming defendant's sentence of life imprisonment, in part because he had a prior conviction for sponsoring a gathering with the knowledge or intent that a controlled substance would be distributed, in violation of Iowa Code § 204.407 (1979)).

Accordingly, at the Hearing, the court held that Defendant's 1992 Counterfeit Substance Conviction and his 1993 Counterfeit Substance Conviction qualified as "felony drug offense[s]," as that phrase is defined in 21 U.S.C. § 802(44). Therefore, Defendant has three prior felony drug convictions, and his mandatory minimum sentence is life imprisonment. 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), 851 and 860.

### IV. *ALTERNATIVE CAREER OFFENDER FINDING*

In the event the court was wrong about the predicate offenses and its mandatory minimum finding, the court alternatively found that Defendant is a "career offender" for purposes of USSG §4B1.1. Section 4B1.1 states:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of

> conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG §4B1.1(a). It is undisputed that Defendant was eighteen years old at the time of the instant offense of conviction and that the instant offense of conviction is a felony that is a controlled substance offense. It is also undisputed that Defendant has one prior felony conviction for a crime of violence: the 1993 Controlled Substance Conviction. The fighting issue is whether Defendant's two prior convictions for delivery of counterfeit or simulated controlled substances are "controlled substance offenses" for career offender purposes.

The advisory Sentencing Guidelines define "controlled substance offense" broadly. Section §4B1.2 provides:

> The term "controlled substance offense" means an offense under federal or state law, punishable by a term of imprisonment of more than one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (*or a counterfeit substance*) or the possession of a controlled substance (*or a counterfeit substance*) with intent to manufacture, import, export, distribute, or dispense.

USSG §4B1.2(b) (emphasis added). To determine whether a given conviction qualifies as a "counterfeit substance offense," the court must examine the elements of the statutes of conviction and decide whether the "conviction involved a substance that was made in imitation with an intent to deceive." *United States v. Robertson*, 474 F.3d 538, 541 (8th Cir. 2007) (examining how Illinois statute defined "look-alike" to determine if it matched the dictionary definition of "counterfeit"); *see also United States v. Mills*, No. 06-4776, 2007 F.3d 1310303, *3 (4th Cir. May 7, 2007) (examining how Maryland statute defined "imitation"); *United States v. Crittenden*, 372 F.3d 706, 708 (5th Cir. 2004) (examining

8

how Texas statute defined "simulated"). As the court's discussion in Part III of this Order shows, Defendant's two prior convictions for "counterfeit" or "simulated" controlled substances involved a substance that was made in imitation of a controlled substance with an intent to deceive.

Accordingly, at the Hearing, the court held that Defendant was a "career offender" for purposes of USSG §4B1.1.

## V. CONCLUSION

The court held that Defendant Dennis Morris Brown was subject to a mandatory minimum sentence of life imprisonment, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(C), 851 and 860. In the alternative, the court held that Defendant was a "career offender" for purposes of USSG §4B1.1.

**IT IS SO ORDERED.**

**DATED** this 21st day of May, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

9